WILLIAM F. MacCORMAC *vs.* MICHAEL J. FLYNN & others.

Essex.     December 8, 1942. — April 1, 1943.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & RONAN, JJ.

*Equity Pleading and Practice*, Master: findings; Decree. *Deceit. Equity Jurisdiction*, Accounting, Plaintiff's clean hands.

A contention that a finding by a master was not supported by evidence was without merit where it appeared that the finding was not a mere conclusion from other facts found by him but rested on all the evidence before him, and the evidence was not reported.

Neither a harmless misrepresentation by the plaintiff in a suit in equity, relied on by one of the defendants in making a contract with the plaintiff, nor the plaintiff's harmless violation of a municipal ordinance pertaining to the subject matter of the contract required application of the doctrine that the plaintiff must come into court with clean hands or otherwise barred him from obtaining an accounting for property of his which came into the defendants' hands under the contract, where it appeared that the first defendant had not sought to rescind the contract but had had the full benefit of performance thereof for over two years, and with the other defendants was conspiring in violation of the contract to deprive the plaintiff of the property which was the subject matter of the suit.

A final decree fixing total liability of defendants as to property in their possession should not also contain provisions for future credit to the defendants for the value of such of that property as might be returned to the plaintiff.

BILL IN EQUITY, filed in the Superior Court on June 24, 1941.

From a final decree entered by order of *Morton*, J., the defendants appealed.

*J. E. Henchey*, for the defendants, submitted a brief.

*J. W. Eastman*, for the plaintiff.

QUA, J. This is a bill for an accounting and for ancillary relief in respect to a business of raising pigs carried on under the terms of a contract between the plaintiff and the defendant Michael J. Flynn made shortly before December 7, 1938, and later reduced to writing.

By the terms of the contract the defendant Michael J. Flynn was to care for, feed, and house the plaintiff's hogs

and pigs and to provide a suitable place for that purpose, to bear all the expenses incurred in the operation of the piggery (except certain items assumed by the plaintiff to be paid by the plaintiff out of gross profits), to "pick up the feed at restaurants, stores and other places" designated by the plaintiff, and to "be responsible for any and all the missing stock," all in consideration of fifty per cent of the net profits of the plaintiff's business.

The master finds that the defendant Michael J. Flynn housed the plaintiff's pigs in buildings owned by said Flynn located on land in Peabody "hired" by him of the defendant Sauvageau; that in November, 1940, Flynn wished to change the agreement so as to increase his share of the profits, but the plaintiff refused to agree; that shortly thereafter the defendant Annie G. Flynn, wife of the defendant Michael J. Flynn, told the plaintiff that he (the plaintiff) was all through there and that all the pigs belonged to her; that early in 1941 the defendant Sauvageau ordered the plaintiff to keep off his premises and "posted his premises"; and that all three defendants "wrongfully conspired to deprive the plaintiff of his property." He further found that "there should now be in the possession of the defendant, Michael J. Flynn, nine hundred and forty pigs of the value of $11,280," the property of the plaintiff.

The final decree held all defendants liable to the plaintiff for the value of the pigs that the defendant Michael J. Flynn "should have" in his possession, subject to a credit for such of the pigs as have been or may be turned over to the plaintiff, and held the defendant Michael J. Flynn liable in the further sum of $1,002.38 on an accounting for pigs sold and expenses. The defendants appeal.

The defendants contend that the master's finding that the defendants wrongfully conspired to deprive the plaintiff of his property was not supported by evidence. If we assume the point to be open upon an appeal from the final decree (see G. L. [Ter. Ed.] c. 214, § 27), the answer to it is that the finding is not stated as a mere conclusion from other findings but rests upon all the evidence that was before the master. Since we do not know what that evidence

was, obviously we cannot say that the finding is wrong for want of supporting evidence. *Milbank* v. *J. C. Littlefield, Inc.* 310 Mass. 55, 59, 60. *Ferrone* v. *Rossi,* 311 Mass. 591, 594.

The defendants' second point is that the plaintiff obtained his contract with the defendant Michael J. Flynn by false representations to Flynn that the plaintiff had contracts with the "owners" for the garbage that Flynn was to collect and a license to collect it. On the findings, the plaintiff did make those representations and Flynn relied upon them. The truth was that, although the plaintiff had no contracts with the "owners," they did permit him to collect, and that, although he had no license to collect garbage such as seems to have been required by rules of the board of health of Malden, where the collections were made, he did have a license to transport it. At all events, the defendant Michael J. Flynn had the full benefit of his contract with the plaintiff, including the garbage, for over two years. He has suffered no damage and has never, so far as appears, sought to rescind the contract or offered to restore anything he has received under it. On the contrary he and the other defendants now desire, in violation of the contract and also of the plaintiff's property rights, to retain for one or more of themselves the plaintiff's pigs and the proceeds of some that have been sold, all of which came into their hands by virtue of the contract. This they cannot do. *McKinley* v. *Warren,* 218 Mass. 310, 313. *Loomis* v. *Pease,* 234 Mass. 101, 107. *Solomon* v. *Kaufman,* 250 Mass. 276. *Lincoln Investment Co.* v. *James,* 260 Mass. 541, 543. *Roche* v. *Gryzmish,* 277 Mass. 575, 579. *Labagnara* v. *Kane Furniture Co.* 289 Mass. 52, 55. *Commissioner of Banks* v. *Chase Securities Corp.* 298 Mass. 285, 327. Am. Law Inst. Restatement: Contracts, § 480.

Similar considerations rule out the defence of unclean hands. That defence rests upon grounds of public policy and of the integrity of the courts. In a case like this public policy does not require that the plaintiff's former violation of a rule of the board of health, if he did violate it, or his actually harmless misrepresentation to one defendant

at the beginning of the enterprise be made available to the three defendants two years later to avoid the consequences of their new, independent, and greater wrong in conspiring to deprive the plaintiff of his property. The doctrine of clean hands is not one of absolutes. It is to be so applied as to accomplish its purpose. *Lurie* v. *Pinanski*, 215 Mass. 229. *Warfield* v. *Adams*, 215 Mass. 506, 523, 524. *New York, New Haven & Hartford Railroad* v. *Pierce Coach Lines, Inc.* 281 Mass. 479, 482.

The decree, although final in that it fixes the total liability of the defendants and supplies sanctions for the discharge of that liability, is irregular in provisions which it contains for future credit on account for the value of pigs to be returned to the plaintiff. This may lead to further controversy in contempt proceedings over facts which ought to have been determined before the entry of the final decree. But as no party objects to the form, the decree may stand, although it is not to be taken as a precedent.

*Decree affirmed with costs.*