This certifies that this is the opinion of the Appellate Division in this cause.

Suzanne Hurley
Clerk, Appellate Division

## ABBOTT RENTAL COMPANY, INC.
### vs.
## AMERICAN MAGAZINE SERVICE COMPANY, INC.

### No. 8771

U.S. District Court
Appellate Division/Northern District
Trial Court of the
Commonwealth of Massachusetts

**February 16, 1983**

Joseph Melone, Esq., counsel for Plaintiff.
Paul E. Stanzler, Esq., counsel for Defendant

## OPINION

**Tiffany, J.** This is an action in contract in which the plaintiff, Abbott, as the lessor, seeks to recover a sum as liquidated damages from the defendant, American, as lessee, for early termination of an automobile leasing contract.

After a trial on the merits, there was a finding for the plaintiff, Abbott, in the amount of $2,437.91 which was entered on the docket sheet and it was stipulated by the parties that this amount was the judgment and that the finding memoranda setting forth $2,289.12 was a typographical error.

A summary of the evidence presented at trial as contained in the report reveals that the parties had entered into a written motor vehicle rental agreement on May 3, 1979 for the lease of a 1979 Pontiac Gran Prix. The term of the lease was for twenty-six (26) months and required monthly payments of $425.15. It is not in dispute that Abbott purchased the automobile at American's request and provided the specified options at a cost to Abbott of $8,-918.99, and that this was a lease agreement and not a lease purchase agreement. The lease also contained a termination clause requiring defendant (American), in the event of termination, to pay an amount up to eighteen (18) months rental payments plus two (2) months past the termination date. Translated from this obscure legalese, it appears that Abbott needed twenty month rental payments before it started to make a profit.

Due to factors beyond its control, American's counsel notified Abbott on September 30, 1980 that its employee, Gloverman, was no longer employed by American and the automobile was to be returned to Abbott. This was accomplished on October 1, 1980 by Glovernman personally returning the automobile to Abbott. The contract was, in effect, terminated as of that date and it was stipulated between the parties that the September rental check was received by Abbott and was no longer an issue at trial.

On or about October 7, 1980, the subject automobile was sold to Goverman by Abbott for $6,700.00. Abbott, on that day, had an outstanding chattel mortgage of $6,243.30.

The defendant, American, is presently before this Division claiming to be aggrieved by the denial of its requests for rulings of law numbers 1 through 9.

The trial justice's findings were specific

and to the point wherein she set forth:
"I find the defendant breached its contract with the plaintiff and the plaintiff is entitled to damages under the terms of the contract."

**Request Numbers 1 & 2:**

1. The plaintiff's effort to recover from the defendant where the plaintiff previously received compensation for the sale of the automobile constitutes a violation of G. L. c. 93A, § 11. As a result, the defendant is entitled to judgment in the amount of $7,520.01 (treble damages; three times ad damnum), plus costs and reasonable attorney's fees.

2. The plaintiff's effort to recover from the defendant where the plaintiff previously refused compensation for the sale of the automobile constitutes a violation of 15 U.S.C. § 1600 et seq. and 12 C.F.R. 226, Regulation Z. As a result, the defendant is entitled to judgment in the amount of $7,520.01 (treble damages; three times ad damnum), plus costs and reasonable attorney's fees.

These requests can be treated alike as the facts clearly set forth and as the trial justice found, American was in breach of the terms of the contract. It is a general rule that where one breaches a contract to be performed for an entire price, he cannot recover on the contract because he has not performed and is not within the provisions of G. L. c. 93A, § 11 because his voluntary failure to complete the agreement prevents recovery, **Jewett** v. **Warriner,** 237 mass. 36, 38 (1921).

As to request number 2, it is clear that this was a lease agreement and not a lease purchase agreement. When American returned the vehicle to Abbott, it had no further interest in the vehicle and Abbott was under no legal obligation to consult American as to further disposition of the vehicle.

**Requests Numbers 3, 4 & 5:**

3. The defendant is entitled to judgment in its favor because the plaintiff sold the automobile in question in a commercially unreasonable manner in violation of G.L. c. 106 et seq.

4. The defendant is entitled to judgment in its favor because the plaintiff acted in bad faith in violation of G. L. c. 106 et seq.

5. The defendant is entitled to judgment in its favor because the lease upon which the plaintiff relies is unconscionable, unenforceable and otherwise null and void.

These requests bring into play G. L. c. 106, § 2-302(1), commonly referred to as the unconscionability aspects of a contract, and is an issue of law to be decided by the court. The basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract. The principle is one of prevention of oppression or unfair surprise. **Zapatha** v. **Dairy Mart,** 408 NE 2nd. 1370, 1375 (1980). It is clear from the evidence that both parties were clear in their own minds as to what they wanted from the contract at issue. The vehicle was purchased by Abbott at American's request with forty (40) specific options set forth by American and fulfilled by Abbott. Attorneys for both parties were involved in the execution of the contract. There was a definite equality of a bargaining position, no attempt at exploitation, the liquidated damage provision and the reasons for the inclusion were or should have been understood by American. As contract unconscionability must be determined on a case basis, **Commonwealth** v. **Gustafson,** 370 Mass. 181, 187 (1976), we cannot find potential for unfairness to American in the inclusion of the liquidated damage clause in the contract.

**Request Number 6:**

The termination clause upon which plaintiff relies is unenforceable because the stipulated sum is unreasonably and grossly disproportionate to the real damages from the alleged breach, and the amount

stated is unconscionably excessive. Thus, even if the plaintiff is to prevail, plaintiff can be awarded no more than actual damages. **A-Z Servicecenter, Inc.** v. **Segal,** 334 Mass. 672, 675 (1956). It is likewise unconscionable to allow plaintiff to recover a charge for unearned interest. **Id** at 677. Since the plaintiff here has failed to prove actual damages, the defendant is entitled to judgment in its favor.

From the actions of the parties, it was clearly anticipated that the damages were to be liquidated and readily computed on a rational basis. **Daley** v. **J. F. White Contracting Company,** 347 Mass. 285 (1964). In the instant case, no penalty was involved as the quid pro quo was to make Abbott as whole as if the contract had been completed.

### Requests Numbered 7a, 7b & 8:

7a. Because the plaintiff sold the automobile to the defendant's employee where the plaintiff believed that the employee was still employed by the defendant, the plaintiff's sale to the defendant's agent constitutes an accord and satisfacation of plaintiff's claim against defendant.

7b. Where plaintiff sold the automobile to the defendant's employee with the knowledge that the employee had been terminated by the defendant and where plaintiff did not offer to sell the automobile to the defendant nor notify the defendant of the plaintiff's intention to sell the automobile to the former employee, the plaintiff is estopped to look to the defendant for payment in this action. As a result, the defendant is entitled to judgment in its favor.

8. The plaintiff's sale of the automobile to the defendant's employee with ·or without knowledge of that employee's termination, in the absence of an offer to sell to defendant or notice of the impending sale to the defendant's employee, and in the absence of efforts by the plaintiff to secure estimates or to advertise the automobile for sale constitutes a waiver of plaintiff's rights against the defendant.

Request number 7a is inconsistent with the draft report where communication was made to Abbott by American that Gloverman was no longer in their employ.

Request numbers 7b and 8 — since the agreement was of the garden variety lease and not a purchase lease arrangement, and once terminated by American, Abbott was under no legal obligation to establish a partnership with American to dispose of the vehicle. The contract between the parties had been breached by American who knew or should have known of its outstanding obligations flowing from the breach. Clearly, Abbott is not estopped from asserting its contractual rights as a result of the breach and by disposing of its assets for a profit of $457.00, does not constitute a waiver of its right to liquidated damages previously agreed to by American.

### Requests Number 9:

The defendant is entitled to judgment because the plaintiff suffered no damages.

Most contractual obligations between parties involve a risk. Abbott extended monies and assumed an obligation of a substantial sum of money for the benefit of American with the prospect of obtaining a profit. To insure itself against this loss, it required American by means of the liquidated damage clause, to indemnify itself against this loss. The recovery of a profit is of itself not grounds for setting the contract aside. **Bell** v. **Fred T. Lay & Co.,** Inc., 278 Mass. 60, 75 (1932).

There being no error, the report is dismissed.

So ordered,